NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0022n.06

No. 16-5161

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| KASIE STEVENS-BRATTON, individually and on behalf of all others similarly situated, | ) ) ) | **FILED**<br>Jan 11, 2017<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) ) |  |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| TRUGREEN, INC., | ) ) |  |
| Defendant-Appellee. | ) ) ) ) |  |

**BEFORE: KEITH, BATCHELDER, and CLAY, Circuit Judges.**

**DAMON J. KEITH, Circuit Judge.** Kasie Stevens-Bratton ("Stevens-Bratton") appeals from the district court's order granting TruGreen, Inc.'s ("TruGreen") motion to compel arbitration and denying her class certification, which dismissed all claims against TruGreen. The district court concluded that an agreement between Stevens-Bratton and TruGreen required arbitration even though the agreement expired before the relevant events that are the subject of Stevens-Bratton's lawsuit. Because the dispute between Stevens-Bratton and TruGreen does not "arise under" the expired agreement, we **REVERSE** the judgment compelling arbitration and **REMAND** for further proceedings.

## I. BACKGROUND

TruGreen is a lawn care service provider headquartered in Memphis, Tennessee. On May 15, 2013, Stevens-Bratton entered into an agreement with TruGreen for lawn care services. The agreement included three specific provisions at issue in this case:

> **CONTACT INFORMATION**. If I have provided TruGreen with my cell phone number, I agree that TruGreen may contact me on that number using an automatic telephone dialing system or prerecorded or artificial voice to discuss my account and lawn care services, including current and possible future services, customer service and billing. I understand that providing my cell phone number is not required to purchase TruGreen's services and that I may revoke this permission at any time.
>
> **MANDATORY ARBITRATION**. Purchaser and TruGreen agree that any claim, dispute or controversy ("Claim") between them or against the other or the employees, agents or assigns of the other, and any Claim arising from or relating to this agreement or the relationships which result from this agreement including but not limited to any tort or statutory Claim shall by resolved by neutral binding arbitration by the American Arbitration Association ("AAA"), under the Rules of the AAA in effect at the time the Claim is filed ("AAA Rules"). . . . Each party shall be responsible for paying its own attorneys' fees, costs and expenses, the arbitration fees and arbitrator compensation shall be payable as provided in the AAA Rules. However, for a Claim of $15,000 or less brought by Purchaser in his/her/its individual capacity, if Purchaser so requests in writing, TruGreen will pay Purchaser's arbitration fees and arbitrator compensation due to the AAA for such Claim to the extent they exceed any filing fees that the Purchaser would pay to a court with jurisdiction over the Claim. The arbitrator's power to conduct any arbitration proceeding under this arbitration agreement shall be limited as follows: any arbitration proceeding under this agreement will not be consolidated or joined with any arbitration proceeding under any other agreement, or involving any other property or premises, and will not proceed as a class action or private attorney general action. The foregoing prohibition on consolidated, class action and private attorney general arbitrations is an essential and integral part of this arbitration clause and is not severable from the remainder of the clause. . . . This arbitration agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act. 9 U.S.C. Sections 1-16. . . . Neither

party shall sue the other party with respect to any matter in dispute between the parties other than for enforcement of this arbitration agreement or of the arbitrator's award. **THE PARTIES UNDERSTAND THAT THEY WOULD HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT AND TO HAVE A JUDGE OR JURY DECIDE THEIR CASE, BUT THEY CHOOSE TO HAVE ANY DISPUTES DECIDED THROUGH ARBITRATION.**

**CLASS ACTION WAIVER**. Any Claim must be brought in the parties' individual capacity, and not as a plaintiff or class member in any purported class, collective, representative, multiple plaintiff, or similar basis ("Class Action"), and the parties expressly waive any ability to maintain any Class Action in any forum whatsoever. The arbitrator shall not have authority to combine or aggregate similar claims or conduct any Class Action. Nor shall the arbitrator have authority to make an award to any person or entity not a party to the arbitration. Any claim that all or part of this Class Action Waiver is unenforceable, unconscionable, void, or voidable may be determined only in a court of competent jurisdiction and not by an arbitrator. **THE PARTIES UNDERSTAND THAT THEY WOULD HAVE HAD A RIGHT TO LITIGATE THROUGH A COURT AND TO HAVE A JUDGE OR JURY DECIDE THEIR CASE AND TO BE PARTY TO A CLASS OR REPRESENTATIVE ACTION, HOWEVER, THEY UNDERSTAND AND CHOOSE TO HAVE ANY CLAIMS DECIDED INDIVIDUALLY, THROUGH ARBITRATION.**

TruGreen provided lawn care services to Stevens-Bratton from May 15, 2013 until May 15, 2014, when Stevens-Bratton terminated the agreement with TruGreen. On November 9, 2013, Stevens-Bratton registered her cell phone number with the National Do-Not-Call Registry. Beginning on January 27, 2015, Stevens-Bratton received over ten telemarketing calls on her cell phone from TruGreen, who used an automatic telephone dialing system. Despite Stevens-Bratton's requests that TruGreen stop calling her, the calls continued.

Thereafter, Stevens-Bratton filed a complaint against TruGreen alleging violations under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and sought class certification, or in the alternative, a stay of certification briefing pending discovery in federal

district court. TruGreen filed an answer and a motion to dismiss and compel arbitration, or in the alternative, to stay the litigation. The district court denied Stevens-Bratton's motion for class certification, granted TruGreen's motion to compel arbitration, dismissed all claims against TruGreen, and entered a judgment for TruGreen. Stevens-Bratton timely appealed.

## II. DISCUSSION

### A. Standard of Review

"This Court reviews de novo a district court's conclusions of law regarding whether to compel arbitration pursuant to the Federal Arbitration Act." *Lowry v. JPMorgan Chase Bank, N.A.*, 522 F. App'x 281 (6th Cir. 2013) (citing *Answers in Genesis of Ky., Inc. v. Creation Ministries, Int'l, Ltd.*, 556 F.3d 459, 469 (6th Cir. 2009)). "[B]efore compelling arbitration a court must determine whether a valid arbitration agreement exists and whether the dispute falls within that agreement's scope." *Rowan v. Brookdale Senior Living Cmtys., Inc.*, 647 F. App'x 607, 609 (6th Cir. 2016) (citing *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003)). "The nonmoving party . . . may challenge an arbitration agreement 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* (quoting 9 U.S.C. § 2).

### B. Analysis

#### 1. Arbitrability

Stevens-Bratton argues that the agreement's arbitration clause does not apply to her TCPA claim concerning the legality of the telemarketing calls because the agreement expired before she received those calls. The FAA reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). However, "[b]efore compelling an unwilling party to arbitrate, a court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and

that the specific dispute falls within the substantive scope of that agreement." *Bratt Enter., Inc. v. Noble Intern. Ltd.*, 338 F.3d 609, 612 (6th Cir. 2013) (internal quotation and citation omitted).

In *Litton*, the Supreme Court considered whether a dispute over layoffs, which occurred after the expiration of a collective-bargaining agreement, arose under the agreement despite its expiration. *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. NLRB*, 501 U.S. 190, 193 (1991). The Court held that the presumption in favor of postexpiration arbitration of matters will apply "only where a dispute has its real source in the contract." *Id.* at 205. Further, the Court stated that a dispute will have its real source in the contract where: (1) it involves facts and occurrences that arose before expiration; (2) an action taken after expiration infringes a right that accrued or vested under the agreement; or (3) under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement. *Id.* at 205-206. Thus, in order to prevail in her argument that her dispute with TruGreen does not arise under the contract, Stevens-Bratton must prove that none of the three aforementioned conditions are present here.

### i. Facts and occurrences did not arise before expiration

The district court in this case relied upon our *Huffman* decision to determine that the arbitration clause survived the expired agreement in this case. In *Huffman*, this court considered whether the "strong presumption" in favor of arbitration applies post-expiration when an arbitration clause is not listed in a survival clause or whether the omission of the arbitration clause from a survival clause in an agreement constitutes a "clear implication" that the parties intended the arbitration clause to expire with the agreement. *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 393 (6th Cir. 2014). *Huffman* involved a professional services contract agreement that governed an employment relationship and eventually expired. *Id.* The agreement included both

an arbitration clause and a survival clause, but the survival clause, which detailed the provisions of the contract that would survive past expiration or termination of the agreement, did not explicitly mention the arbitration clause. *Id.* at 394.

This court noted that "with respect to agreements containing broadly-worded arbitration clauses, 'there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* at 395 (quoting *Litton*, 502 U.S. at 209). However, the Supreme Court in *Litton* "refuse[d] to apply that presumption wholesale in the context of an expired . . . agreement, for to do so would make limitless the contractual obligation to arbitrate." *Litton*, 501 U.S. at 209.

In *Huffman*, this court rejected the argument that the omission of the arbitration provision from the survival clause was tantamount to a clear implication that the parties did not intend the arbitration clause to have post-expiration effect. *Huffman*, 747 F.3d at 397. Rather, this court concluded that the agreement did not indicate any intent by the parties to create an exhaustive list of every provision that would survive expiration of the agreement. *Id.* We rationalized that decision on the basis that the non-compete clause of the agreement stated that it remained in effect for twelve months after expiration, but the non-compete clause was not included in the survival clause. *Id.*

However, this case is different from *Huffman*. There was no survival provision in the agreement at issue here. Thus, we are dealing with a completely expired agreement. This case is more akin to *South Cent. Power Co. v. Int'l. Broth. Of Elec. Workers*, *Local Union 2359*, 186 F.3d 733 (6th Cir. 1999), where this court considered whether arbitration was required in a situation in which some, but not all, of the facts and occurrences arose prior to the expiration of

the agreement. In *South Central*, this court held that "a dispute 'arises under the contract' when a *majority* of the *material* facts and occurrences arose before the expiration of the . . . agreement." *Id.* at 740 (emphasis in original). If a majority of the material facts and occurrences arose before the expiration of the agreement, we must then "determine if the parties negated, either expressly or by clear implication, the presumption that the arbitration clause of the . . . agreement extends beyond the expiration of the Old Agreement." *Id.* at 741.[1]

TruGreen argues that a majority of the material events regarding the dispute occurred before the agreement expired. TruGreen describes those material events as: (1) the parties' negotiation of the terms of the agreement; (2) the memorialization and discussion of Stevens-Bratton's lawn care needs; (3) Stevens-Bratton's election to provide her cell phone number to TruGreen; and (4) Stevens-Bratton's vesting in TruGreen the right to call her at that number to discuss "possible future services."

However, the memorialization of Stevens-Bratton's lawn care services is irrelevant to this case and thus not material, as her dispute only deals with phone calls and not anything concerning the services TruGreen provided her. Further, usually the agreement itself or the negotiation thereof, is not part of the inquiry of material facts concerning the dispute. *See, e.g.*, *South Central*, 186 F.3d at 739; *General Truck Drivers, Chauffeurs, Warehousemen and Helpers, Local No. 957 v. Dayton Newspapers, Inc.*, 83 F. App'x 712, 714 (6th Cir. 2003); *Zucker*, 174 F. App'x 944, 945, 948 (6th Cir. 2006). Thus, only two of TruGreen's alleged material occurrences before the expiration of the agreement remain: Stevens-Bratton providing her cell phone number and allowing TruGreen to call her regarding "possible future services."

---

[1] While *South Central* and *Litton* concern cases involving collecting bargaining agreements, "their holdings are based upon principles applicable to arbitration agreements generally, and their application need not be limited to the collective bargaining context." *Zucker v. After Six, Inc.*, 174 F. App'x 944, 947 (6th Cir. 2006).

However, TruGreen overlooks the other material occurrences surrounding the dispute; indeed, the occurrences at the heart of the dispute itself—the more than ten phone calls Stevens-Bratton received after the agreement expired. The phone calls are the majority of the material events of the dispute and thus the majority of events occurred *after* the agreement expired. Absent those phone calls, there is in fact no dispute at all. Thus, we need not analyze whether the parties negated, expressly or impliedly, the presumption that the arbitration clause extends beyond the expiration of the agreement.[2]

> **ii.     Post-expiration action does not infringe a right that accrued or vested under agreement**

The district court found that the agreement allowed TruGreen to call Stevens-Bratton about "possible future services" and thus the right to call her accrued or vested under the agreement. "[A] court may use standard principles of contract interpretation to determine whether a right is vested." *Cincinnati Typographical Union No. 3, Local 14519, Commc'ns. Workers of America, AFL-CIO v. Gannett Satellite Info. Network, Inc.*, 17 F.3d 906, 910 (6th Cir. 1994) (citation omitted). That means "we might conclude the parties intended a right to vest if we are shown contract language or extrinsic evidence to support that conclusion." *Id.* Further, this court presumes certain types of rights to be "accrued or vested" without any other evidence in a contract when they can be "worked toward or accumulated over time." *Id.* at 911 (citing

---

[2] TruGreen points to our holding in *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386 (6th Cir. 2003), to assert that the proper method to determine whether an issue is within the scope of an arbitration agreement "is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Id.* at 395. However, this rule applies to disputes arising out of *existing* agreements, not those that expired prior to the dispute. *See, e.g.*, *Nestle Waters North America, Inc. v. Bollman*, 505 F.3d 498 (6th Cir. 2007); *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807 (6th Cir. 2008); *Dental Assocs., P.C. v. American Dental Partners of Michigan, LLC*, 520 F. App'x 349 (6th Cir. 2013). Whether the parties could maintain an action without reference to the contract or relationship is not helpful when, as here, the contract has expired.

*Chauffeurs, Teamsters & Helpers, Local Union 238 v. C.R.S.T., Inc.*, 795 F.2d 1400, 1404 (8th Cir. 1986) (en banc)). Some examples are severance or vacation pay, where the longer a person works, more pay accrues and thus the right accrues and vests over time. *Id.*

TruGreen's right to call Stevens-Bratton is not the type of right that we typically view as accruing or vesting under a contract. We do not view a right under an agreement as dependent upon the conveyance of a benefit, but instead we view a purported right as such if it can be "worked toward or accumulated over time." *Id.* The right to call a phone number does not accumulate over time. In fact, the right to call someone's phone number is revocable by that person at any point, which the agreement at issue anticipates. Thus, TruGreen did not have a vested right to call Stevens-Bratton. Even if we assumed otherwise, our inquiry would then be whether Stevens-Bratton's request to end the telemarketing calls infringed on TruGreen's right to call her. *See Litton*, 501 U.S. at 205-06 (requiring analysis of whether an action taken after expiration infringes a right that accrued or vested under the agreement). That inquiry is counterintuitive and further illustrates that the right to call a person's number is not the type of right that would accrue or vest under a contract.

iii. **Disputed contractual right does not survive expiration under normal principles of contract interpretation**

Despite the above analysis, we must still determine whether the disputed contractual right, that is, TruGreen's right to call Stevens-Bratton regarding future services, survives expiration under normal principles of contract interpretation. "[C]ontracts must be construed as a whole . . . ." *Workmon v. Publishers Clearing House*, 118 F.3d 457, 459 (6th Cir. 1997). "Moreover, the 'cardinal rule' in contract interpretation is to ascertain the parties' intent." *Soltis v. J.C. Penny Corp. Inc.*, 635 F. App'x 245, 248 (6th Cir. 2015) (quoting *Omnicom Grp., Inc. v. 880 W. Long Lake Assocs.*, 504 F. App'x 487, 490 (6th Cir. 2012)). "In an unambiguous

contract, intent is established solely based on the plain language of the contract because in such a case, no outside evidence can better evince the intent of the parties than the writing itself." *Id.* (internal quotation marks omitted). An ambiguous contract, however, "should be construed against its drafter." *Royal Ins. Co. of America v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 423 (6th Cir. 2008). Additionally, "contracts must be construed consistent with common sense and in a manner that avoids absurd results." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 545 (6th Cir. 2007) (citation omitted).

The contact information provision at issue in the agreement states that Stevens-Bratton agrees that TruGreen may contact her on her cell phone "to discuss [her] account and lawn care services, including current and possible future services, customer service and billing." The district court interpreted the provision to mean that TruGreen could contact Stevens-Bratton after the termination of her agreement to discuss returning as a client for more services.

However, Stevens-Bratton argues that this interpretation would lead to absurd results because it would allow TruGreen to contact her indefinitely past the expiration of the agreement. She argues that nothing in that contract provision implies that the discussions themselves would take place outside the term of the contract. To be sure, the district court acknowledged that this interpretation, which terminates the right to call about future services at the expiration of the contract, was just as viable an interpretation as the reading that allows for calls concerning possible future services indefinitely after termination of the contract. Thus, because the provision is susceptible to more than one reasonable interpretation, there is ambiguity in the contract. *See Roy v. Bledsoe Cmty. Hosp., Inc.*, 61 F. App'x 930, 934 (6th Cir. 2003).

Construing the provision against the contract's drafter, TruGreen, we must read the provision regarding "possible future services" with the interpretation that favors Stevens-Bratton,

identified by the district court, as concerning Stevens-Bratton's account with TruGreen *before* the contract expired. Thus, TruGreen's disputed right to call Stevens-Bratton does not survive expiration under the contract under normal principles of contract interpretation.[3]

For these reasons, we conclude that Stevens-Bratton's TCPA dispute with TruGreen did not arise under the contract and thus the district court's judgment was erroneous.

## 2. Unconscionability

Stevens-Bratton also argues that the arbitration clause is unconscionably broad because it pertains to "any claim, dispute or controversy." We resolve this issue summarily. This court has upheld arbitration provisions with the same language that Stevens-Bratton disputes. *See, e.g.*, *Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366, 368 (6th Cir. 2014) (upholding arbitration provision that stated that "any controversy between [the parties] . . . arising out of or relating to this Agreement, our relationship, any services provided . . . or the use of the Services, . . . shall be arbitrated . . ."); *Lowry v. JPMorgan Chase Bank, N.A.*, 522 F. App'x 281, 283 (6th Cir. 2013) (upholding arbitration provision that applied to "[a]ny claim or dispute, whether in contract, tort, statute or otherwise . . . between you and us or our employees, agents, successors or assigns, which arise out of or relate to your credit application . . ."). Thus, the district court did not err in concluding that the arbitration provision was not unconscionable.

## 3. Class Action Waiver

Lastly, TruGreen argues that the class action waiver in the agreement is enforceable and that even if we reverse the district court's order granting the motion to compel arbitration, we

---

[3] To be sure, pursuant to *Huffman*, we examine "arbitration language in a contract in light of the strong policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration." *Huffman*, 747 F.3d at 395. However, at this stage of the analysis, we are not examining the arbitration language in the contract. Instead, we must decide whether TruGreen's disputed right to call Stevens-Bratton survives expiration of the agreement under basic contract principles, not under the policy favoring arbitration.

11

should affirm the district court's order denying class certification. In response, Stevens-Bratton argues that the class action waiver does not apply to her claims for conduct that occurred after the agreement expired. The district court denied Stevens-Bratton's motion for class certification on the basis that the claim was arbitrable. The district court did not make findings of fact or conclusions of law regarding the merits of Stevens-Bratton's motion for class certification. Consequently, there is no record to review regarding application of the class action waiver. Because we reverse and remand the district court's order granting the motion to compel arbitration and dismissing Stevens-Bratton's claims, we vacate the district court's order denying the motion for class certification, and remand for further proceedings consistent with this opinion.

## III.    CONCLUSION

For the foregoing reasons, the district court erroneously found that Stevens-Bratton's dispute against TruGreen arose under the expired agreement and thus erroneously concluded that the dispute was arbitrable. Accordingly, we **REVERSE** the district court's judgment compelling arbitration, vacate the judgment denying class certification, and **REMAND** for further proceedings.